# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| LANE HOWARD | CIVIL ACTION NO. 18-1417 |
| VERSUS | JUDGE MICHAEL J. JUNEAU |
| U.S. COMM'R S.S.A. | MAGISTRATE JUDGE WHITEHURST |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

## ADMINISTRATIVE PROCEEDINGS

The claimant, Lane Howard, fully exhausted his administrative remedies prior to filing this action in federal court. The claimant filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on January 24, 2013.[1] His applications were denied on December 2, 2015.[2] The claimant requested a hearing,[3] which was

---

[1] Tr. 178.

[2] Tr. 19.

[3] Tr. 11.

held on June 19, 2017 before Administrative Law Judge Nancy M. Pizzo.[4] The ALJ issued a decision on November 3, 2017,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from January 24, 2013 through the date of the decision. The claimant asked for review of the decision, but the Appeals Council concluded on May 31, 2018 that no basis existed for review of the ALJ's decision.[6] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on March 15, 1974[1] and was 43 years old at the time his case was adjudicated by the ALJ. He has a "limited" education, having completed the tenth grade, and has a steady work history, albeit with limited earnings. From 2001 through 2009, the claimant work and paid into FICA. Beginning in 2009, the claimant worked in non-FICA employment with the St. Landry Parish School Board, and his insured status expired in June 2014. He has

---

[4] The hearing transcript is found at Tr. 42-70.

[5] Tr. 19-28.

[6] Tr. 1 – 3.

[1] Tr. 178.

part relevant work as a garbage collector, welder's helper, galley hand, and school janitor. His work ranged in exertional level from medium to very heavy. The claimant alleges that he is disabled due to a gastrointestinal bleeding episode that occurred in November 13, 2013 and depressive disorder.

## ANALYSIS

### A. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[12] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

---

[12] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

## B. <u>Entitlement to Benefits</u>

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[15] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[16] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[17] *Martinez v. Chater*, 64 F.3d at 174.

[18] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

both insured and disabled, regardless of indigence.[19] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[20]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

---

[19]    See 42 U.S.C. § 423(a).

[20]    42 U.S.C. § 1382(a)(1) & (2).

[21]    42 U.S.C. § 1382c(a)(3)(A).

[22]    42 U.S.C. § 1382c(a)(3)(B).

### C.  Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[23] If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[24]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[26] The claimant's residual functional capacity is used at the fourth step to

---

[23] 20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[25] 20 C.F.R. § 404.1520(a)(4).

[26] 20 C.F.R. § 404.1545(a)(1).

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[27]

The claimant bears the burden of proof on the first four steps.[28] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[31] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

---

[27]   20 C.F.R. § 404.1520(e).

[28]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]   *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[31]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32]   *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

### D. THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since January 24, 2013, his alleged onset date.[33] This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: degenerative disc disease; chronic obstructive pulmonary disease; gastric ulcer; depression; and personality disorder.[34] This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[35] The claimant does not challenge this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[37]

At step five, the ALJ found that the claimant has the residual functional capacity to perform light work with occasional stooping, no concentrated exposure to environmental irritants, no direction interaction with the public, and occasional

---

[33] Tr. 21.

[34] Tr. 21.

[35] Tr. 22.

[37] Tr. 26.

direct interaction with co-workers and /or supervisors.[2] The ALJ concluded that the claimant was not disabled from January 24, 2013 through the date of the decision because there are jobs in the national economy that he can perform.[38] The claimant challenges this finding.

### E. THE ALLEGATIONS OF ERROR

The claimant alleges that the ALJ improperly assessed his residual functional capacity in finding that he can perform light work with the modifications noted. Consequently, the claimant contends the ALJ's RFC assessment is not supported by substantial evidence.

**Residual Functional Capacity**

Residual functional capacity is considered the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting *on a regular and continuing basis*. SSR 96-8p, 1996 SSR LEXIS 5, *5. Although the ALJ is responsible for determining a claimant's RFC by reviewing all of the evidence, *Young v. Berryhill*, 689 F. App'x 819, 821 (5th Cir. 2017) (citation omitted), the claimant has the burden of production at Step 4 when RFC is determined. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 20 C.F.R. §§

---

[2] Tr. 23.
[38] Tr. 27.

404.1512, 416.912. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (citations omitted).

Here, the ALJ determined the claimant can perform light work, meaning he could lift and carry up to 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds, and stand and/or walk approximately 6 hours in an 8-hour workday with intermittent sitting for the balance of the time.[3] The ALJ determined the claimant's capacity for light work was further restricted, in that the claimant could only occasionally stoop, have no concentrated exposure to environmental irritants, have no direct interaction with the public, and have only occasional direct interaction with co-workers and/or supervisors.[4] In light of the claimant's RFC and vocational expert testimony concerning the same, the ALJ concluded the claimant is not disabled because, despite his impairment, the claimant can perform jobs that exist in significant numbers in the national economy.[5]

Once an RFC has been determined, the claimant has the burden of production at Step 4. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 20 C.F.R. §§ 404.1512, 416.912. In support of his argument that the ALJ improperly assessed his

---

[3] Tr. 23. See also 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 SSR LEXIS 30, *13-14.
[4] Tr. 23.
[5] Tr. 26-27.

10

RFC, the claimant makes several arguments that sufficient emphasis was not given to his medical impairments. However, after a review of the record, the undersigned finds the ALJ properly evaluated the medical evidence in the record.

The claimant specifically argues that the ALJ mischaracterized evidence concerning his peptic ulcers, inaccurately stating that the claimant himself reported that although he had had stomach ulcers "years ago," he indicated they were not a current problem. The claimant appears to be arguing that his ulcers are, in fact, currently a problem and are disabling. However, the objective medical evidence in the record does not support such a finding. The record shows that in the "Past Medical History" sections of the medical reports from Teche Action Clinic-Franklin, includes "stomach ulcers, years ago."[6] The ALJ's conclusion that the condition was not a "current problem" is reinforced in the same medical reports by the review of system entries and examination findings. Those sections note that the claimant was not experiencing nausea or vomiting, and that the claimant's abdomen was non-tender.[7] The claimant argues that he complained of stomach problems in January 2017. However, a follow-up esophagogastroduodenoscopy (EGD) did not reveal a peptic ulcer.[8]

---

[6] Tr. 584, 593, 614, 622, 629, 636, 653, 660, 667.
[7] Tr. 587-88, 595, 616, 624, 631, 638, 655, 662, 669.
[8] Tr. 550-51; 608, 649; 571-72.

When considering the medical evidence in the record, the ALJ noted that the claimant receives mostly emergency room hospital care, as opposed to regular routine care, indicating the claimant has not made a concerted effort to mitigate the effects of his conditions. The ALJ noted the claimant smokes and has abused alcohol in the past.

Considering the foregoing, the ALJ's statement that the claimant had experienced stomach ulcers in the past, but did not appear to be suffering from them currently, is supported by the evidence in the record. The undersigned also concludes that, based upon the physical limitations presented in the record, the ALJ's RFC assessment limiting to the claimant to light work is supported by substantial evidence in the record.

**Mental Impairments**

With respect to the claimant's mental impairments, the claimant argues that the ALJ improperly discounted the weight of Dr. Henry Lagarde, the state agency psychologist who evaluated the claimant on November 23, 2015. Dr. Lagarde diagnosed the claimant with major depressive disorder with psychotic features and a schizotypal personality disorder, as follows:

> Mental status examination indicates that Mr. Howard would be able to understand simple, detailed instructions but would occasionally have difficulty remembering them and carrying them out. Ability to attend satisfactorily to simple tasks for two hour blocks of time would fairly often be impaired. Mr. Howard has difficulty currently maintaining

persistence and consistency at a full-time job because of mood symptomology and preoccuopation with a variety of difficulties. He would have trouble coping with routine work stress because of tendency to quickly feel overwhelmed. He would have trouble interacting effectively on a regular basis with supervisors and coworkers. He does require some assistance managing funds. Latter opinions about work adjustment are based primarily on psychological information from this evaluation and do not take full account of the medical difficulties.[9]

The ALJ stated she was giving "some weight" to the medical opinion of Dr. Lagarde, explaining that the opinion was based solely on the claimant's subjective complaints, and that these complaints were not corroborated by other evidence in the record. The ALJ credited Dr. Lagarde's opinion "to the extent that the claimant should have no direct interaction with the public and only occasional direct interaction with co-workers and/or supervisors." The claimant argues that the ALJ erred in not giving sufficient weight to Dr. Lagarde's opinion that the claimant has an impaired ability to attend to simple tasks for two-hour periods of time, and difficulty coping with routine work stress. The claimant further argues the ALJ erred in only giving some weight to Dr. Lagarde's opinion that the claimant would have trouble interacting with supervisors and co-workers. The claimant argues that, by not fully incorporating the limitations assessed by the consultative psychological

---

[9] Tr. 496.

13

consultant, the ALJ "chose to substitute her own medical opinions" for that of the consultative psychological consultant.

The Fifth Circuit has indicated that no "pick and choose" error occurs where, as here, the ALJ considered the evidence but decided to afford less weight to a particular physician's opinion. *See, e.g.*, *Stephens v. Barnhart*, 174 F. App'x 232, 233 (5th Cir. 2006) (unpublished). As with all non-treating physicians' opinions, an ALJ is free to incorporate only those limitations she finds "consistent with the weight of the evidence as a whole." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (providing that an ALJ is free to reject any physician's opinion when the evidence supports a contrary conclusion.).

The ALJ erred, however, in stating that the claimant has no treating mental health source. The record shows that Kristin Duhe, Psy.D., served as treating source from October 2016 through, at least, April 2017. However, Ms. Duhe opined that the claimant had normal attention and concentration, was cooperative and calm, had appropriate affect, normal speech, and intact thought process. Ms. Duhe indicated that the claimant was counseled about proper sleep hygiene, including cutting out

caffeine at night. She noted that he was able to sleep when taking Seroquel, and she prescribed this for him.[10]

The undersigned notes that the ALJ is solely responsible for assessing the medical evidence and determining the claimant's RFC. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); *Perez v. Heckler*, 777F.2d 298, 302 (5th Cir. 1985). Furthermore, an RFC assessment is not a medical opinion." *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003)(emphasis added); *see also Jamesv. United States Comm'r, SSA*, No. 6:16-cv-0055, 2018 U.S. Dist. LEXIS107064, at *15 (W.D. La. June 8, 2018) ("The RFC assessment is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment.").

Here, the ALJ was not required to incorporate fully into the RFC assessment the entirety of Dr. Lagarde's opinion. The ALJ considered the medical evidence in the record and gave varying amounts of weight to the different medical opinions she considered. Explanations were given for the amount of weight given to specific medical opinions, and the undersigned concludes that the ALJ's RFC assessment is supported by substantial evidence in the record.

The ALJ also considered the opinion of a state agency psychiatric consultant, who opined that the claimant's ability to follow very short and simple instructions

---

[10] Tr. 671-72.

was not significantly limited. This examiner opined that the claimant's ability to maintain concentration and attention for extended periods was noted to be moderately limited. His ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was noted to be moderately limited. The examiner noted no social limitations, and noted the claimant's ability to respond appropriately to changes in the work setting was rated as moderately limited. The ALJ gave great weight to this opinion to the extent that the claimant should have no direct action with the public and only occasional direct interaction with co-workers and supervisors.[11]

In light of claimant's RFC and vocational expert testimony, the ALJ concluded the claimant was not disabled because, despite his impairment, the claimant could perform jobs that existed in significant numbers in the national economy. The claimant challenges this finding, arguing that the vocational expert's testimony is not substantial evidence because it was not given in response to a full presentation of his restrictions.

An ALJ need only incorporate into her hypothetical questions those claimed disabilities "supported by the evidence and recognized by the ALJ." *Masterson v.*

---

[11] Tr. 25.

*Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). Because the ALJ did so here, the vocational expert's testimony is substantial evidence, and the ALJ was entitled to rely on it. Considering the foregoing, the record as a whole supports the ALJ's RFC assessment. This Court shall not reweigh the evidence in the record, which supports the ALJ's finding that the claimant can do light, unskilled work despite his gastric ulcer issues and depression. For the foregoing reasons, the undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record.

Accordingly, **IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 4th day of February, 2020.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**